# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES HOLBROOK,**
      **Plaintiff,**

**-vs-**                                                                                           **Case No. 6:07-cv-1117-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**
      **Defendant.**
_____

## Memorandum Opinion and Order

This cause came on for consideration without oral argument on review of Defendant's denial of Plaintiff's application for a period of disability and social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is hereby **AFFIRMED.**

### *PROCEDURAL BACKGROUND*

Plaintiff protectively filed an application for a period of disability and disability benefits under Title II, alleging he became disabled on January 1, 2001 (R. 12, 65, 78). The onset date was later amended to January 1, 2003 (R. 134-5). The application was denied initially and upon reconsideration. Plaintiff requested and received a hearing before the Administrative Law Judge (herein "the ALJ"), and on March 8, 2007, the ALJ issued an unfavorable decision (R. 12-22). The Appeals Council declined Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner (R. 5-7). This action timely followed (Doc. No. 1), and the parties consented to the jurisdiction of the United States Magistrate Judge.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims disability based on Post-Traumatic Stress Disorder ("PTSD"), Hepatitis C, degenerative joints, shortness of breath, and high blood pressure (R. 80). His date last insured ("DLI") was December 31, 2005 (R. 14).

*Summary of Evidence Before the ALJ*

Plaintiff was born on December 24, 1952, with a high school education and work experience as an airplane builder/assembler, carpenter, helicopter repairman, and apartment maintenance worker (R. 20, 81, 145-46).

The medical evidence relating to the pertinent time period (alleged onset through date last insured) is well presented in the ALJ's detailed opinion and, in the interest of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, the ALJ reviewed medical records from the Veteran's Administration ("the VA"), which included voluminous treatment records and opinions regarding Plaintiff's complaints of PTSD and joint pain, as well as breathing difficulties and alcoholic cirrhosis of the liver. The medical record also contains opinions from numerous state agency consultants. Additionally, Plaintiff appeared at his hearing, and testified as to his pain and limitations (R. 642-63). A Vocational Expert ("VE") also appeared and testified (R. 663-67).

Based on the above, the ALJ concluded that through his DLI, Plaintiff had the following severe impairments or combination of impairments: generalized degenerative joint disease, Hepatitis C, Post-Traumatic Stress Disorder, and chronic obstructive pulmonary disease (COPD) (R. 14-15). The ALJ also determined that Plaintiff had a substance use disorder (R. 15). Although the impairments were deemed to be severe, the ALJ determined that none of the impairments, either

singly or in combination, met or equaled the Medical Listings (20 C.F.R. pt. 404, Subpt. P., app 1) (R. 15-16). Plaintiff's allegations of pain and limitations were deemed not fully credible (R. 16-18), and the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for a range of light work, involving simple, routine, repetitive tasks (R. 16, 19-20). Based on the testimony of the VE that there were a significant number of jobs that Plaintiff could perform (R. 664-67), the ALJ determined that Plaintiff was not disabled (R. 21-22).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises two issues in his brief: 1) whether the ALJ erred in failing to accord controlling weight to the opinions of treating physicians Drs. Henriquez, Gfeller and Isaacs; and 2) whether the ALJ erred as a matter of law in failing to determine that Plaintiff's PTSD met Listing 12.06 of the Medical Listings. The Court addresses each issue, in turn.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not

warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff presented treatment records from numerous visits to the VA clinics. Among the records are the three opinions at issue here: 1) a July 28, 2005, "Mental Residual Functional Capacity Questionnaire" completed by Edward Gfeller, M.D. (R. 423-27); 2) an August 2, 2005, "Physical Residual Functional Capacity Questionnaire" completed by Luis Henriquez, M.D. (R. 428-32); and 3) a December 13, 2006, "Mental Impairment Questionnaire (RFC & Listings) completed by Karl Isaacs, M.D. (R. 628-33). There is no dispute that, if credited and given controlling weight, these opinions would establish disability as a matter of law. Here, however, the ALJ, while noting the opinions, did not give them controlling weight, finding that the opinions were inconsistent with the record as a whole (R. 15, 17-20). At issue is whether that finding is supported by substantial evidence.

*Dr. Gfeller and Dr. Isaacs' Opinions*

Dr. Gfeller was Plaintiff's treating psychiatrist, according to the VA records. On February 14, 2003, Dr. Gfeller, diagnosed Plaintiff with PTSD, and assessed a Global Assessment of Functioning ("GAF") of 58. (R. 319-320). Plaintiff continued seeing the doctor every two (2) to three (3) months for continued treatment and medication management. (R. 166-339; 383-422; 493-627; 634-635). On

October 15, 2005, Plaintiff was involuntarily admitted to Lakeside Alternatives, a psychiatric facility (R. 451-92). Plaintiff reported that he had been drinking a 12 pack of beer daily, and that he had run out of his medications. Diagnostic impression was major depressive disorder, severe, recurrent, with psychotic features; PTSD; and, alcohol dependence. GAF on admission was 25. Plaintiff was stabilized, and promptly discharged on October 16, following a finding that he did not meet the inpatient criteria (R. 459-61). He was instructed to follow up with the VA and abstain from alcohol use.

In his July 28, 2005 "Mental Residual Functional Capacity Questionnaire" form ("the Gfeller opinion"), Dr. Gfeller noted Plaintiff's GAF to be 55, with a guarded prognosis. The doctor opined that Plaintiff was unable to meet competitive standards in the following areas: complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; or, deal with stress of skilled or semi-skilled work. Additionally, Plaintiff was deemed to be seriously limited, but not precluded, in the following areas: remembering work procedures; working in coordination with or proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; being aware of normal hazards and taking appropriate precautions; setting realistic goals or making plans independently of others; interacting appropriately with the general public; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; or, the ability to use public transportation. In the remaining abilities and aptitudes needed to perform unskilled, semi-skilled or skilled work, the doctor indicated that Plaintiff was limited, but

satisfactory. Dr. Gfeller estimated that Plaintiff would be absent more than four (4) days per month as a result of his impairments or treatment (R. 423-27).

By contrast, nothing in the record indicates that Dr. Isaacs was also Plaintiff's treating psychiatrist during the time period at issue. On December 13, 2006, a year after Plaintiff's DLI, Dr. Isaacs completed a Mental Impairment Questionnaire (RFC & Listings), assessing a GAF of 55 and finding limitations similar to those found by Dr. Gfeller (R. 628-33). There is no record evidence, however, that Dr. Isaacs treated Plaintiff prior to his date last insured and thus, no evidence to support a finding that his opinion regarding Plaintiff's condition in December 2006, is probative of Plaintiff's condition in December *2005,* and earlier.

As to the merits of the opinions, the ALJ noted that both opinions were inconsistent with treatment notes and the record as a whole. This finding is supported by substantial evidence. Plaintiff reported he was doing "quite well" on his medications, with no side effects (R. 528). Moreover, on November 1, 2005, merely two weeks after his involuntary admission at Lakeside Alternatives, Dr. Gfeller found Plaintiff to have normal speech, logical and relevant thought processes, intact insight and judgment, and intact memory and concentration (R. 547), with a GAF of 55. As noted by the ALJ, Dr. Gfeller assigned Plaintiff a GAF of 56 in a treatment note dated July 28, 2005, the very date of the Gfeller opinion (R. 15, 612).[1] The mental status examinations throughout Plaintiff's treatment with Dr. Gfeller do not reflect the disabling limitations listed in the Gfeller opinion. *See, for example,* treatment notes dated February 14, 2003 (GAF of 58, normal speech, logical and relevant thought processes, intact insight and judgment, and intact memory and concentration) (R. 214); December 2,

---

[1] A GAF of 51 to 60 represents moderate symptoms or moderate difficulty in social, occupational or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders ("DCM-IV"). Such a finding is inconsistent with the marked limitations contained in the Gfeller and Isaacs opinions.

2004 (same mental status examination) (R. 220); June 11, 2004 (GAF of 52) (R. 237); April 9, 2004 (same mental status examination, and GAF of 55 (R. 244); and January 6, 2004 (GAF of 61, note that Plaintiff reported "feeling better" and more stable) (R. 281).

The ALJ also noted and credited the opinions of two state agency psychologists, which differed considerably from the opinions of Drs. Isaacs and Gfeller. On February 6, 2005, Dr. Carter, a state agency non-examining medical consultant, found Plaintiff's disorder caused mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence and pace; and, no episodes of decompensation of extended duration.[2] According to the medical consultant, claimant was moderately limited in his ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Carter opined that Plaintiff was able to understand, remember and carry out simple instructions/procedures; make simple decisions; and, concentrate to complete the things that he starts (R. 348-57).

On September 8, 2005, Dr. Eeltink, a second state agency non-examining psychologist, opined that Plaintiff's anxiety related disorder caused mild restrictions of activities of daily living, and, mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and, no episodes of decompensation, each of extended duration. According to the medical consultant, Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods;

---

[2] Note that this opinion pre-dates the lone Lakeside Alternatives admission, which was not of "extended duration," in any event.

ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, ability to travel in unfamiliar places or use public transportation. The medical consultant opined that Plaintiff was generally able to complete tasks within his physical limitations, and could complete simple tasks, make decisions, avoid hazards, and relate adequately to function in the workplace (R. 433-50).

The ALJ also relied on and gave great weight to the opinion of Dr. Grant, a medical doctor who completed a consultative physical examination of Plaintiff on February 16, 2005 (R. 358-62). In addition to other findings discussed below, Dr. Grant found Plaintiff to be alert and oriented, with normal affect and mood.

The findings of the state agency consultants are supported by substantial record evidence. As indicated above, Plaintiff's treatment notes indicate consistently mild to moderate limitations. Other than an anxious mood, Plaintiff's mental status examinations were mostly benign, and he was repeatedly described as alert and cooperative, with intact judgement, insight, memory and concentration. Indeed, the very same day Dr. Gfeller issued his July 2005 opinion, noting serious difficulties in Plaintiff's memory and concentration abilities, his treatment note indicated *no* such impairments, reflecting "intact" memory and concentration, and a GAF of 56 (R. 612). The ALJ's determination not to give controlling weight to the opinions of Drs. Gfeller and Isaacs and to give greater weight to the opinions of the state agency consultants (which were consistent with the treatment notes of Dr. Gfeller) is supported by substantial evidence and was made in accordance with appropriate legal standards.

*Dr. Henriquez' Opinion*

Dr. Henriquez treated Plaintiff for a variety of conditions, mainly related to his joint pain, Hepatitis C, COPD and substance abuse. In his August 2, 2005 RFC opinion, Dr. Henriquez opined, among other things, that Plaintiff could sit for only twenty minutes at a time, stand for only five minutes at a time, and sit and stand/walk less than two hours during an eight-hour workday (R. 429-30). He also opined that Plaintiff could occasionally lift less than ten pounds, and that he needed a cane for ambulation (R. 430). Dr. Henriquez stated that Plaintiff's COPD limited Plaintiff's walking ability and ability to be around fumes (R. 431).

The ALJ did not give controlling weight to this opinion, finding it to be inconsistent with the record evidence as a whole (R. 19). This finding, too, is supported by substantial evidence. A chest x-ray performed in June 2005 showed "no acute findings" (R. 409), and a second pulmonary function study showed only a "minimal obstructive lung defect" and "mild restrictive lung defect" (R. 398). Plaintiff's dyspnea (shortness of breath) was noted to be "out of proportion to the spirometric findings" (R. 409). Plaintiff was encouraged to engage in aerobic exercise a minimum of 20 to 30 minutes, three times per week (R. 316, 544), and was repeatedly advised to stop smoking. The ALJ noted that, contrary to the opinion that Plaintiff could lift less than ten pounds, Plaintiff testified that he could lift 30 pounds (R. 652). The ALJ also noted the opinion of Dr. Grant, the consultative examiner, who found Plaintiff to have a slow but normal gait without an assistive device, and normal 5/5 grip strength, normal sensation and normal reflexes in his extremities (R. 360, 361). The record also includes evidence that Plaintiff reported no problems with daily functioning, and claimed to be independent in activities of daily living (R. 221). The ALJ did not err in declining to give controlling weight to the opinion of Dr. Henriquez.

**Meeting a listing**

The final issue Plaintiff raises is the ALJ's finding that Plaintiff's PTSD was not severe enough to met or equal a Medical Listing.

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Here, Plaintiff asserts that the ALJ erred in failing to find that his PTSD met Listing 12.06. Listing 12.06 indicates that an individual meets this Listing when his impairment meets the requirements in both A and B, or in both A and C. Section A of the Listing is met when there are medically documented findings of at least one of the listed requirements, which include, among others, recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; and, recurrent and intrusive recollections of a traumatic experience, which are a source of

-11-

marked distress. Section B is met if at least two (2) of the following are present: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration.  In order for the C criteria to be met claimant's impairments must result in complete inability to function independently outside the area of one's home. (20 C.F.R., Part 404, Subpart P, Appendix 1).  The ALJ found that Plaintiff's PTSD involved "mild and moderate, but not marked, restrictions and difficulties" (R. 16), and therefore, did not meet the Listings.

Plaintiff contends that he suffers from recurrent panic attacks and relies on the findings of Dr. Gfeller and Isaacs to establish marked limitations. However, as noted above, at this stage, it is Plaintiff's burden to establish medical findings that meet the criteria of the Listing.  To the extent he relies only on the opinions of Drs. Gfeller and Isaacs, as the ALJ properly discounted those opinions as being inconsistent with the medical findings, they do not support his argument. As Plaintiff points to no other findings, medical or otherwise,[3] sufficient to establish that he meets the criteria of the Listing, no error is shown.[4]

---

[3] *See, generally, Shinn ex rel. Shinn v. Commissioner of Social Security,*  391 F.3d 1276 (11th Cir. 2004).

[4] As the Court finds that Plaintiff has not made a sufficient showing that his PTSD meets the criteria set forth in the Listings, it need not address the Commissioner's additional arguments regarding the impact of Plaintiff's substance abuse on his allegations of disability.

### *CONCLUSION*

The decision of the Commissioner is supported by substantial evidence and was made in accordance with appropriate legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 1, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record